UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| VOODOO LEATHERWORKS LLC<br><br>Plaintiff,<br><br>v.<br><br>WASTE CONNECTIONS US, INC. and WASTE CONNECTIONS OF COLORADO, INC.<br><br>Defendants. | Case No.:<br><br>CLASS ACTION |

### CLASS ACTION COMPLAINT

Plaintiff Voodoo Leatherworks LLC files this Class Action Complaint against Defendants Waste Connections US, Inc. and Waste Connections of Colorado, Inc., (collectively "Waste Connections" or "Defendants") on behalf of itself and all others similarly situated in Colorado. In support thereof, Plaintiff states the following:

#### I.   NATURE OF THE CASE

1. Waste Connections has engaged in a widespread and systematic practice of unlawfully overcharging its customers by imposing unlawful and excessive rate increases in violation of the uniform contract at issue.

2. Waste Connections is one of the largest solid waste disposal companies in the United States, with nearly $5 billion in annual revenue. For years, it entered into standardized form agreements with small businesses like Plaintiff. These agreements establish that Waste Connections will provide solid waste disposal service for a fixed rate over a course of years. The uniform language at issue in these agreements specifies that Waste Connections may increase this fixed rate only in specific circumstances and, then, only in contractually-dictated amounts.

3. The uniform contractual language present in every class member's contract

1

establishes that Waste Connections may increase rates "from time to time to adjust for increases in the Consumer Price Index."[1] The Consumer Price Index is an objective, external governmental measure of inflation. But, in violation of this contractual mandate, Waste Connections has repeatedly overcharged customers through automated rate increases that far out-strip any increases in CPI. Waste Connections itself acknowledges that "inflation has not materially affected our operations in recent years." *See* 2018 Waste Connections, Inc. Form 10-K, p. 72. But while CPI increases have been effectively non-existent during the relevant time period, the Waste Connections' "CPI" rate increases are imposed frequently and are significant in amount, often exceeding 50% over the course of a contractual term. Through rate increases that exceed the allowable amounts under the contract, Waste Connections has breached the form contractual language that it entered into with Plaintiff and every member of the putative class.

4. Further, this case presents a prototypical situation for class treatment. Waste Connections' conduct—including all relevant practices, contracts, and documents—is uniform among all customers. The application of common law to an identical course of conduct will determine liability for the class as a whole, ensuring that the rights of thousands of Colorado small businesses are vindicated through the efficiency of a single trial.

## II. JURISDICTION AND VENUE

5. Plaintiff is a citizen of Colorado. Waste Connections of Colorado, Inc. is a citizen

---

[1] The contract also allows Waste Connections to "proportionately" increase rates to correspond to other, specific external cost increases it might incur (such as the cost of "disposal, fuel, materials and operations" or "transportation costs due to changes in location of the disposal facility"). Waste Connections charges other fees (a "Fuel & Material Surcharge" among them) to recover these other purported increased costs. Notably, during the time period at issue, Waste Connections effectively had no increased fuel, material, operational or other contractually-recognized costs that would allow it to impose the rate increases under those provisions of the contract. However, these fees and the costs which Waste Connections claims justify them are not at issue in this lawsuit

of Delaware (its state of incorporation) and Texas (the state of its principal office). Waste Connections US, Inc. is a citizen of Delaware (its state of incorporation) and Texas (the state of its principal office). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000, the proposed classes consist of more than 100 members, and minimal diversity exists (Plaintiff is a citizen of Colorado and Defendants are citizens of Delaware and Texas). Waste Connections has more than one million customers, thousands of which, upon information and belief, entered into the form contract at issue and were subject to the price increase practices at issue.

6. This Court has personal jurisdiction of Defendants because they are authorized to do business and in fact do business in this district, the conduct at issue in this case partly originated and took place in district. Defendants could reasonably anticipate litigation in this district under traditional notions of fair play and substantial justice.

7. Venue is proper in this Court under 28 U.S.C. § 1391. Plaintiff is located in this judicial district, and the conduct giving rise to Plaintiff's claims occurred in this judicial district.

### III. PARTIES

8. Voodoo Leatherworks, LLC is a Colorado entity with its principal place of business in Colorado Springs, Colorado.

9. Plaintiff's experience with Waste Connections is typical of the class in all relevant aspects. Plaintiff entered into a form contract with Waste Connections in 2013. During the statutory period and under the form contract, Waste Connections unilaterally and unlawfully implemented and collected automated rate increases that affected Plaintiff on multiple occasions (in that Plaintiff paid the rate increases), none of which complied with the contractual terms. Throughout Plaintiff's experience, Waste Connections imposed multiple rate increases each of

which were in violation of the form contract at issue. As a result, by the end of its contractual period, Plaintiff was paying more than 50% more than agreed upon for the same service and made such payments each month. The direct and proximate result of these unlawful, deceptive, and unfair automated rate increases is that Plaintiff has been damaged by paying more than agreed.

10. Waste Connections US, Inc. and Waste Connections of Colorado, Inc. are Delaware corporations with their principal place of business in Texas.

11. Defendants, and their related entities, operate as a single organization with regard to the conduct at issue in this lawsuit. Waste Connections of Colorado, Inc. shares management structure and financial accounting with its subsidiaries and parent company, Waste Connections US, Inc., and any legal distinction between these entities and its subsidiaries is a fiction designed to limit liability. Waste Connections of Colorado, Inc., is the alter ego of its parent corporation Waste Connections US, Inc. in that the parent corporation controls all relevant aspects of the business. Waste Connections US, Inc. was directly involved in—and responsible for—the conduct alleged herein. It designed, implemented, charged, and collected the rate increases, which contribute directly to their profit margins. Generally, upon information and belief, Waste Connections US, Inc. (in coordination with its parent Waste Connections, Inc.) assesses rate increases, determines the amount of rate increases, and ensures that they are implemented and collected through invoicing. State subsidiaries like Waste Connections of Colorado, Inc. provide physical services and assists in the charging and collecting of the fees and rate increases. All management level decisions are made by Waste Connections US, Inc. (in coordination with Waste Connections, Inc.) and all subsidiaries have no discretion in following such decisions. As used herein, "Waste Connections" refers to Waste Connections US, Inc. and Waste Connections of Colorado, Inc.

## IV. FACTUAL ALLEGATIONS

12. Waste Connections is one of the largest waste disposal companies in the United States, with "millions of customers," locations in forty-one states, and over $5 billion in annual revenue. It operates throughout Colorado.

13. Plaintiff is a small business in Colorado Springs, Colorado. Plaintiff requires solid waste disposal services and, like thousands of others, entered into a standardized agreement with Waste Connections to provide these services. This agreement is a long-term contract that primarily establishes a set rate for disposal services and which contains standardized language that governs if and how Waste Connections may be able to increase rates to adjust for increases in CPI during the pendency of that contact. And, like thousands of others, after locking customers into these long-term contracts, Waste Connections unilaterally imposed unlawful rate increases on Plaintiff with no contractual justification.

14. Waste Connections' systematic, automated rate increases do not—in intent or effect—adjust for increases in the Consumer Price Index as required by the uniform contractual provision. Rather, after entering into long-term, fixed-rate contracts, Waste Connections carries out a deliberate scheme to repeatedly increase rates without contractual justification by amounts that far exceed CPI. Upon information and belief, it does so through a consistent, centralized automated rate increase process that was intended to glean tens of millions of dollars of unearned profit from its customers. This conduct breaches the form contract.

### A. The Standardized, Uniform Contractual Language At Issue.

15. Waste Connections uses effectively standardized "service agreements" to contract with customers regardless of location. Every putative class member entered into such an effectively identical form contract. All relevant terms are pre-printed by Waste Connections,

including the uniform "Rate Adjustments" provision that governs the rate increases at issue in this litigation.

16. This Rate Adjustments provision allows for Waste Connections to increase rates in specific instances. Specifically, it states:

> **Customer agrees that the rates charged by Contractor hereunder shall be increased from time to time to adjust for increases in the Consumer Price Index.** Because disposal, fuel, materials and operations costs constitute a significant portion of the cost of Contractor's services provided hereunder, Customer agrees that Contractor may increase the rates hereunder proportionately to adjust for any increase in such costs or any increases in transportation costs due to changes in location of the disposal facility. Customer agrees that Contractor may also proportionately pass through to Customer increases in the average weight per **container yard of Customer's waste materials, increases in Contractor's** costs due to changes in local, state or federal rules, ordinances or regulations applicable to Contractor's operations or the services provided hereunder, and increases in taxes, fees or other governmental charges assessed against or passed through to [Waste Connections] . . . .[emphasis added]

17. Thus, under the express terms of this provision, Waste Connections may increase rates only in certain instances. For purposes of the rate increases and claims arising from them at issue in this case, the contract states that Waste Connections may increase rates "from time to time to adjust for increases in the Consumer Price Index." Waste Connections purportedly does so through systematic, automated rate increases that are generally imposed at the beginning of each year.

18. And, while not directly at issue here, the contract also allows Waste Connections to "proportionately" "pass through" increases in specifically-identified areas of costs, such as fuel or materials to its customers. Notably—separate from the rate increases challenged here—Waste Connections purports to pass through such separate increases through a host of fees and charges, such as "fuel and material surcharges", although it did not experience increases in these areas of cost that would allow them to increase rates under these provisions.

6

19. Aside from establishing the fixed rate for service and the limited manner in which Waste Connections may charge more than this rate, the form contract also contains other relevant standard provisions which (a) establish a long term of at least three years, (b) integrate the contract and limit its interpretation to the four corners of the document itself, and (c) allow Waste Connections punitive remedies in the event a customer "fails to pay [Waste Connections] all amounts which become due under this Agreement…".

B.  **Waste Connections' Unlawful, Unilateral Rate Increase Practice.**

20. Waste Connections has violated the form contract by systematically increasing rates by more than increases in the Consumer Price Index. The form contract provides that Waste Connections may increase rates "from time to time to adjust for increases in the Consumer Price Index."

21. Waste Connections has carried out a systematic and deliberate practice of repeatedly increasing rates by more than increases in the CPI. Waste Connections induces customers into entering into form contracts with fixed rates while knowing, but not disclosing, that it has an internal corporate practice and strategy of continually, invariably, and unlawfully increasing rates by more than allowed by contract.

22. Waste Connections unilaterally imposes automated increases at least annually, and often more frequently. Upon information and belief, these rate increases are directed by Waste Connections' corporate officers as part of a broad strategy to increase profit and are carried out through an automated process using Waste Connections' customer relationship management system.

23. The amount of the rate increases varies each year, but are uniformly significant and excessive, and can result in customers paying more than 50% more than agreed by the end of the

initial term of their agreement. Each increase Waste Connections imposed on class members exceeds CPI increases, and the totality of such increases similarly far out-strip CPI increases over any given time period. Upon information and belief, based upon investigation, Waste Connections imposed rate increases identical in timing, methodology, and intent (and similar if not identical in percentage) as across most of its customer base each year during the relevant time period.

24. These unilateral automated rate increases violate the form contractual language that governs them and is present in every contact at issue because they exceed CPI increases. There is no legal justification for Waste Connections' practice of unilateral, systematic rate increases.[2] Waste Connections knows when it presents contracts for fixed rates that these it will inflate these rates precipitously and continually. Waste Connections' practices breach the form contractual language they entered into with Plaintiff and hundreds or thousands of other small businesses across Colorado, violates the duty of good faith and fair dealing that underpins that contract, and has resulted in it being unjustly enriched at its customers' expense. As a direct result of its unlawful rate increase conduct, Waste Connections has wrongfully taken millions of dollars from its customers.

    C.    **Neither Plaintiff, Nor Any Putative Class Member, Had Full Knowledge OF All Material Facts.**

25. No putative class member, including Plaintiff had "full knowledge" of the facts pertaining to the rate increases such that would allow them to realize or act on their legal claim.

26. Waste Connections ensures that no customer can discover the true nature and illegality of the rate increases. For example, Waste Connections does not disclose what CPI

---

[2] No customer consented to these increases; they were unilaterally imposed by Waste Connections which ensures that there is no avenue for customer choice or negotiation (even if customers could have discovered the violations at issue) through stringent, punitive liquidated damages and attorney's fees provisions.

measure it purportedly is using or the amounts, frequency, and timing of the rate increases. Nor does Waste Connections disclose the methodology—or lack thereof—that purportedly justifies the increase or the amount of the increases. Without such information, no customer could determine the illegality of a given rate increase imposed by Waste Connections.

27. Further, Plaintiff and each putative class member was under a contractual, legal obligation to pay the invoiced charges to Waste Connections. Upon information and belief, Waste Connections enforces its form contracts—including punitive liquidated damages and attorney's fees provision—to ensure that customers cannot escape them, even if such customers could have known that the fuel surcharges and rate increases were unlawful and deceptive.

## V. CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action pursuant to Rule 23(a) and (b)(3), and proposes the following class:

> All persons or entities who reside in the Colorado who, during the applicable statute of limitations, entered into a contract with Waste Connections that provides "Customer agrees that the rates charged by Contractor hereunder shall be increased from time to time to adjust for increases in the Consumer Price Index" and paid more than their contractually-agreed upon rates as a result of increases.

29. Excluded from the proposed class are customers who entered into a contract which contains an arbitration provision or class waiver.

30. Also excluded from the proposed class are members of the judiciary who preside over this case or related litigation, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities.

31. As used in these class definitions, "Waste Connections" means Waste Connections US, Inc., Waste Connections of Colorado, Inc., and all related entities, predecessors, subsidiaries,

affiliates, and parent companies.

32. Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

### A. Existence And Predominance Of Common Questions Of Law And Fact.

33. Waste Connections engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation. This common course of conduct— imposing rate increases that were unlawful and excessive—affected class members in the exact same manner. The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Waste Connections' common conduct. A single, uniform, pre-printed contract will govern all class members' contractual claims. Extraneous contractual evidence is prohibited by a form integration clause.

34. This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist. Such common questions include, but are not limited to, the following:

    a. Whether Waste Connections used standard form contracts with customers;

    b. Whether Waste Connections imposed rate increases on putative class members who entered into the standard contract;

    c. Whether Waste Connections' standard contract only allowed Waste Connections to increase rates to adjust for increases in the Consumer Price Index;

    d. Whether Waste Connections' rate increases exceeded increases in the Consumer Price Index;

  e. Whether the rate increases Waste Connections enacted were not in good faith;

  f. Whether the rate increases Waste Connections enacted resulted in it being unjustly enriched;

  g. Whether Waste Connections has any increased fuel, material costs, or other specific costs;

**B. Numerosity.**

35. The total number of members of each putative class is so numerous that individual joinder is impracticable. Waste Connections has over a million customers nationwide, and the class contains hundreds if not thousands of members.

**C. Typicality.**

36. The claims of the named Plaintiff are typical of the claims of the class. Plaintiff, like other class members, entered into the form contract, and paid rate increases that were not legally justified. Plaintiff was subject to, and harmed by, the exact same common policies and practices which effected all class members.

**D. Adequacy.**

37. Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Plaintiff shares the same interests and was harmed by the same conduct as each other class member. Resolution of this case will inherently vindicate and redress the interests of Plaintiff equally with class members. Plaintiff has retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the class.

**E. Superiority and Manageability.**

38. The class action is superior to other available methods for the fair and efficient

adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is very large, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims. The interests of judicial economy favor adjudicating the claims for the Plaintiff class in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Waste Connections. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## VI. CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of the Class)

39. All allegations and paragraphs numbered 1-38 in this complaint are incorporated by reference.

40. Plaintiff and each member of the Class entered into standardized agreements with Waste Connections which contain identical relevant contractual language.

41. Plaintiff and each member of the class performed on their agreements, including by paying Waste Connections for services.

42. As set out herein, through its practice of unilaterally increasing rates by more than increases in the Consumer Price Index Waste Connections breached the agreements.

43. Plaintiff and each member of the Class have been directly and proximately harmed by Waste Connections' breach of contract in that each paid more than allowed by contract.

## COUNT II
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
(On Behalf of the Class)

44.     All allegations and paragraphs numbered 1-43 in this complaint are incorporated by reference.

45.     To the extent necessary, this count is pled in the alternative.

46.     Plaintiff and each member of the class entered into standardized agreements with Waste Connections which contain identical relevant contractual language.

47.     Plaintiff and each member of the class performed on their agreements, including by paying Waste Connections for services.

48.     Waste Connections failed to perform on the agreements in good faith. Waste Connections acted arbitrarily and capriciously. It failed to fulfill discretionary duties it had under the contract to adjust rates reasonably and in good faith. Waste Connections' uniform course of conduct in raising rates lacks honesty in fact and is inconsistent with the reasonable expectation that Waste Connections would increase rates reasonably and only in accordance with the terms of the uniform contract. Through its wrongful conduct, Waste Connections unfairly prevented Plaintiff and each member of the class from receiving the full benefits of their agreements.

49.     Plaintiff and each member of the class have been directly and proximately harmed by Waste Connections' breach of the covenant of good faith and fair dealing in that each paid an unlawfully increased rate.

## COUNT III
## UNJUST ENRICHMENT
(On Behalf of the Class)

50.     All allegations and paragraphs numbered 1-49 in this complaint are incorporated by reference.

51. To the extent necessary, this count is plead in the alternative to Count I and Count II.

52. Through its rate increase practices, Waste Connections received money from the putative class which in equity and justice it should not be permitted to keep. By imposing rate increases which it knew to be not justified by any related increase and which do not adjust for changes in the Consumer Price Index or the costs identified in the contracts, by suppressing and misrepresenting material facts (including that it would charge far more than agreed or represented), and by engaging in other wrongful and unlawful conduct as set out herein, Waste Connections obtained money which properly belongs to the putative class. The benefit conferred by the putative class was non-gratuitous, provided at the expense of Plaintiff and the class, and Waste Connections realized value from this benefit. It would be unjust for Waste Connections to retain this benefit without commensurate compensation.

53. Plaintiff and each member of the Rate Increase Class have been directly and proximately harmed by Waste Connections conduct in that each paid more for services than they rightfully owed.

## VII. PRAYER FOR RELIEF

54. Plaintiff, on behalf of itself and each member of the putative class, demands all remedies and damages available to it, including all unlawful rate increases paid, injunctive relief (including declaratory relief and a prohibition on future unlawful rate increases or surcharges), restitution, interest, and the attorneys' fees and costs incurred in bringing this action.

## Trial By Jury

Plaintiff and the Class are entitled to, and demand, a trial by jury.

Respectfully submitted,

/s/ *Jason E. Ochs*
Jason E. Ochs (CO Bar No. 39663)
OCHS LAW FIRM
PO Box 10944
Jackson, WY 83002
Phone: 307.234.3239
Fax: 307.235.6910
jason@ochslawfirm.com

Oscar M. Price, IV
Nicholas W. Armstrong
Garrett Owens
PRICE ARMSTRONG, LLC
2421 2nd Avenue North, Suite 1
Birmingham, AL 35203
Phone: 205.208.9588
Fax: 205.208.9598
oscar@pricearmstrong.com
nick@pricearmstrong.com
garrett@pricearmstrong.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on July 23, 2021, I filed the foregoing using the CM/ECF system which will send electronic notice of such filing to all counsel of record.