**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:21-cv-02005-RMR-MDB

VOODOO LEATHERWORKS LLC,

     Plaintiff,

v.

WASTE CONNECTIONS US, INC. and WASTE CONNECTIONS OF COLORADO, INC.,

     Defendants.

---

**ORDER**

---

Pending before the Court are the Motion to Dismiss for Lack of Standing and to Strike Class Action Allegations, ECF No. 37, and the Motion for Summary Judgment, ECF No. 38, filed by Defendants Waste Connections US, Inc. and Waste Connections of Colorado, Inc. For the reasons stated below, the Court DENIES IN PART the Motion to Dismiss, ECF No. 37, and GRANTS the Motion for Summary Judgment, ECF No. 38.

## I.  BACKGROUND

This putative class action concerns the form contracts for the waste collection and disposal services of Defendants Waste Connection of Colorado, Inc. and Waste Connections US, Inc.[1]  A contract signed by an individual named Paul Ulmer—who

---

[1] Defendant Waste Connections of Colorado, Inc. and Waste Connections US, Inc. are indirect, wholly-owned subsidiaries of Waste Connections, Inc.  ECF No. 21 at 1.

named Plaintiff Voodoo Leatherworks, LLC ("Voodoo") contends is its sole owner and registered agent, ECF No. 47 at 2—is the basis for Plaintiff's claims here.  On March 14, 2013, Mr. Ulmer signed the contract for Defendant Waste Connection of Colorado, Inc. to provide waste collection and disposal services at an address in Colorado Springs, Colorado.  ECF No. 37-1 at 1; ECF No. 38-1 at 1.  The contract provides a certain "service total" but also provides that the rate charged for waste collection and disposal services "shall be increased from time to time to adjust for increases in the Consumer Price Index" ("CPI"), among other adjustments.  *See* ECF No. 37-1 at 1–2; ECF No. 38-1 at 1–2.

On July 23, 2021, Plaintiff filed its Class Action Complaint, ECF No. 1, alleging that "in violation of this contractual mandate, Waste Connections has repeatedly overcharged customers through automated rate increases that far out-strip any increases in CPI."  ECF No. 1 ¶ 1.  Plaintiff alleges that Defendants thereby "engaged in a widespread and systematic practice of unlawfully overcharging its customers by imposing unlawful and excessive rate increases in violation of the uniform contract at issue."  *Id.*  Plaintiff brings claims against Defendants for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment, on behalf of itself and a proposed class.  *See id.* ¶¶ 28, 39–53.

On November 23, 2021, Defendants filed their Motion to Dismiss and Motion for Summary Judgment, arguing that (1) Plaintiff is not a party to any contract with Defendants and therefore is not "the real party in interest" under Federal Rule of Civil Procedure 17(a)(1) and lacks standing to bring this breach of contract action, ECF No. 37 at 1, 8–10; (2) the Court should strike Plaintiff's class action allegations because Plaintiff

fails to allege a viable proposed class, *id.* at 1, 10–15; and (3) Defendants are entitled to summary judgment because the claims are barred by the statute of limitations, ECF No. 38 at 1–8.  Defendants' motions are ripe for review.

The Court first addresses Defendants' arguments in their Motion to Dismiss that Plaintiff lacks Article III or prudential standing because Plaintiff is not the proper party. *See, e.g.*, *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980) ("A federal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction, and the court is not bound by the acts or pleadings of the parties.").  Ultimately, for the reasons set forth below, the Court does not find that Defendants' arguments raise standing or jurisdictional issues on real-party-in-interest grounds and does not find that dismissal on such grounds is proper at this stage.  However, the Court does find that Plaintiff's claims were filed outside of the applicable statute of limitations and that Defendants' Motion for Summary Judgment should be granted.  Therefore, the Court need not reach any of Defendants' additional arguments in their Motion to Dismiss regarding the viability of the alleged proposed class.

## II.      SUBJECT MATTER JURISDICTION

The claims in this case are state law claims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment.  Therefore, the Court's jurisdiction arises under diversity jurisdiction, pursuant to 28 U.S.C. § 1332(d), because, first, Plaintiff is "a citizen of a State different from any defendant."  *See* 28 U.S.C. § 1332(d)(2)(A).  The allegations in the Complaint suggest that Plaintiff is a citizen of Colorado, while Defendants are citizens of Delaware and Texas.  ECF No. 1 ¶ 5.  Second,

Plaintiff alleges that the amount in controversy exceeds $5,000,000.  *See id.*; 28 U.S.C. § 1332(d)(2).  Finally, Plaintiff alleges that the proposed class consists of more than 100 members because "Waste Connections has more than one million customers, thousands of which, upon information and belief, entered into the form contract at issue and were subject to the price increase practices at issue."   ECF No. 1 ¶ 5; *cf.* 28 U.S.C. § 1332(d)(5)(B).  Therefore, the Court may exercise diversity jurisdiction over this putative class action.

### III.   MOTION TO DISMISS

Defendants argue in their Motion to Dismiss that Plaintiff is not a party to a contract with the Defendants, and therefore, Plaintiff lacks standing and the Court does not have jurisdiction over this case under Article III of the Constitution.  ECF No. 37 at 1, 8–10; *see, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.").  According to Defendants, Mr. Ulmer is the only signatory to the contract at issue, and Voodoo is not identified anywhere on the contract.  *See* ECF No. 37 at 1, 8–9.  However, "whether Plaintiff is a real party in interest does not raise justiciability concerns."   *EEOC v. Outback Steak House*, No. 06-cv-01935-EWN-BNB, 2007 WL 2947326, at *4 (D. Colo. Aug. 27, 2007) (Nottingham, C.J.) (citing *Federal Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1236 (10th Cir. 1990)).  "Even if standing jurisprudence is helpful by analogy in resolving real-party-in-interest issues, this does not convert real party in interest into a nonwaivable issue of subject matter jurisdiction."  *Bachman*, 894 F.2d at 1236.  Therefore, the Court does not have "an independent duty to satisfy [it]sel[f],

as a jurisdictional matter," that Plaintiff was a party to a contract with Defendants.  *See MTGLQ Investors, LP v. Wellington*, 856 F. App'x 146, 156 (10th Cir. 2021).

Plaintiff points out that Rule 17 of the Federal Rules of Civil Procedure "essentially codifie[s]" the "general prohibition on a litigant's raising another person's legal rights" under the prudential standing doctrine.  *See Boscoe Chung v. Lamb*, No. 14-cv-03244-WYD-KLM, 2018 WL 6429922, at *4 (D. Colo. Nov. 14, 2018) (Daniel, J.), *cited in* ECF No. 47 at 5.  However, even if the Court were to find that Plaintiff was not a party to a contract with Defendants and therefore lacked prudential standing to bring the breach of contract claim and the breach of implied duty of good faith claim (which also requires the existence of a contract, *see, e.g.*, *Kirkland v. Robert W. Baird & Co., Inc.*, No. 18-cv-02724, 2020 WL 1452165, at *8 (D. Colo. Mar. 25, 2020) (Krieger, J.) (applying Colorado law)), Defendants would still not have established that Plaintiff lacked standing—under Article III or the prudential standing doctrine—to bring the unjust enrichment claim.  As Defendants themselves note, unjust enrichment is a claim that may only be brought in the *absence* of a contract, ECF No. 49 at 4 (citing *United Water & Sanitation Dist. v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1058 (D. Colo. 2020)), and Defendants have vigorously argued that there is *no contract* between Plaintiff and Defendants.  *See* ECF No. 37 at 8–10; ECF No. 49 at 1–4.  Given that Defendants' standing arguments are premised on their position that Plaintiff is not a party to a contract with Defendants, they have failed to argue that Plaintiff lacks standing to bring the unjust enrichment claim.

Moreover, as Plaintiff points out, *see* ECF No. 47 at 5, even assuming (without deciding) that Plaintiff is not a real party in interest, the Court "may not dismiss an action

for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Therefore, even if the Court were to find that Plaintiff is not the real party in interest, the Court would deny Defendants' motion to dismiss on this ground and allow time for the real party in interest to join the action by, for example, allowing amendment to the Complaint. *See, e.g.*, *Fairfield Dev., Inc. v. J.D.I. Contractor & Supply, Inc.*, 782 F. Supp. 2d 1205, 1207 n.1, 1208 (D. Colo. 2011) (Ebel, J.). However, the Court need not reach this determination and need not grant leave to amend the Complaint because amendment would be futile, given that, for the reasons discussed below, the Complaint was filed outside of the applicable statute of limitations. For that reason, the claims are time-barred, and this case must be dismissed with prejudice. For the same reason, the Court need not reach the issues Defendants raise regarding the viability of the proposed class. *See* ECF No. 37 at 10–15; ECF No. 49 at 4–9. Therefore, the Court DENIES IN PART Defendants' Motion to Dismiss, ECF No. 37, regarding Defendants' jurisdictional arguments and finds that it need not address the remaining contentions in that motion.

## IV.    MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material if under the substantive law it is essential to the proper

disposition of the claim.'"  *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)); *see also Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material.").  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  "[T]he dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson*, 477 U.S. at 248.  "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."  *Bones v. Honeywell, Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

"[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  However, "the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings" at this stage.  *Adler*, 144 F.3d at 671.  If the movant carries "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law," then "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Id.* at 670–71.

Ultimately, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*at 249–50 (citations omitted).

**B.    Analysis**

Defendant argues that this case was brought outside of the statute of limitations period and therefore Plaintiff's claims are time-barred. ECF No. 38 at 4–9. Plaintiff argues that the statute of limitations is six years under Colo. Rev. Stat. § 13-80-103.5(1)(a), rather than three years under Colo. Rev. Stat. § 13-80-101(1)(a), as Defendant argues. ECF No. 63 at 9–13. Plaintiff also argues that its claims accrued during even the three-year statute of limitations period because the parties continued to perform obligations under the contract up to a time within the three-year statute of limitations. Finally, Plaintiff argues that receiving invoices from Defendants showing increases in rates did not cause Plaintiff's claims to accrue because Plaintiff could not have known, upon receipt of invoices alone, of the material facts of the breach. For the reasons stated below, the Court finds that the three-year statute of limitations for breach of contract actions applies and that Plaintiff's claims accrued outside of the statute of limitations period.

### 1.      Applicable Law

This case is before the Court pursuant to diversity jurisdiction.  *See supra* Section

II.  A federal district court sitting in diversity must apply the choice of law rules of the state

in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Therefore, the Court applies Colorado choice of law principles to this case.  Colorado has

adopted the Restatement (Second) of Conflict of Laws § 187 (1971) to determine the law

applicable to a contract action.  *See, e.g.*, *Wood Bros. Homes, Inc. v. Walker Adjustment

Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) ("[W]e now adopt the Restatement (Second)

[of Conflict of Laws] approach for contract actions."); *Target Corp. v. Prestige Maint. USA,

Ltd.*, 351 P.3d 493, 497 (Colo. App. 2013).  Consistent with the Restatement, Colorado

courts "apply the law chosen by the parties unless there is no reasonable basis for their

choice or unless applying the chosen state's law would be contrary to the fundamental

policy of the state whose law would otherwise govern."  *Target Corp.*, 351 P.3d at 497.

Here, the contract at issue provides that it "shall be governed by the laws of the

State in which Customer's service locations listed on the first page of this Agreement are

situated, without regard to conflicts of law provisions."  ECF No. 38-1 at 4.  As stated

above, the contract at issue here provides for a service address in Colorado Springs,

Colorado.  *See id.* at 1.  Neither party has argued that there is no reasonable basis for

applying Colorado law or that applying Colorado law would be contrary to the fundamental

policy of Colorado.  Moreover, the parties, themselves, have applied Colorado law to their

dispute.  *See* ECF No. 38 at 1–8; ECF No. 63 at 2, 4–13; ECF No. 64 at 1–9.  Therefore,

the Court, sitting in diversity, applies Colorado law to this dispute.

2.      **Whether a Three-Year or Six-Year Statute of Limitations Applies**

a.      **The Three-Year Statute of Limitations Applies to the Breach of Contract Claim.**

Under Colorado Law, "[a]ll contract actions . . . , except as otherwise provided in section 13-80-103.5" "regardless of the theory upon which suit is brought, . . . shall be commenced within three years after the cause of action accrues."  Colo. Rev. Stat. § 13-80-101(1)(a).  Section 13-80-103.5 provides that "[a]ll actions to recover a liquidated debt or unliquidated, determinable amount of money due to the person bringing the action" "shall be commenced within six years after the cause of action accrues and not thereafter."  Colo. Rev. Stat. § 13-80-103.5(1)(a).

Plaintiff argues that section 13-80-103.5(1)(a) applies to its claims here, noting that the six-year statute of limitations provided therein applies "if an agreement sets forth a method for determining the amount due, regardless of the need to refer to facts external to the agreement."  ECF No. 63 at 10–11 (quoting *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo. App. 2000)).  *Interbank Investments* involved agreements under which a "developer was to receive reimbursement for its costs of construction" of two water distribution systems.  12 P.3d at 1227.  The Colorado Court of Appeals found that one of the agreements "stated that direct costs, demonstrated by invoices and verified by the water district's engineer, would be eligible for reimbursement" and that the other agreement "specified that 'actual costs expended . . . in connection with the requirements of the Agreement' would be reimbursed."  *Interbank Invs.*, 12 P.3d at 1230.  The court concluded that "the agreements provide that those costs are the amount of debt owed to the plaintiff," which "makes the debt sufficiently 'determinable' for

purposes of invoking § 13-80-103.5(1)(a) as the applicable statute of limitations provision." *Id.* The court also noted other circumstances in which Colorado courts have found an amount owed was sufficiently determinable to invoke that statute of limitations provision:

- "an action to enforce a retainer agreement expressly providing for payment of $100 per hour for legal services, despite the need for external evidence to establish the number of hours worked," *id.* (citing *Rotenberg v. Richards*, 899 P.2d 365 (Colo. App. 1995));

- "a claim under an employment contract . . . where, despite a dispute over the number of hours worked by an individual, the amount due was easily calculable," *id.* (citing *Fishburn v. City of Colo. Springs*, 919 P.2d 847 (Colo. App. 1995)); *see also Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1085 (D. Colo. 2016) (Martínez, J.) (finding that "Plaintiff's FLSA, Colorado Minimum Wage, and breach of contract claims are based on entitlement to an hourly wage and are therefore claims for amounts that are 'easily calculable'");

- "an amount owed under a building contract . . . where the amount was a specified percentage of the estimated cost of construction, despite the parties' dispute over the estimated cost," *id.* (citing *Comfort Homes, Inc. v. Peterson*, 549 P.2d 1087 (Colo. App. 1976)).

In general, "[a] debt is 'liquidated' if the amount due 'is capable of ascertainment by reference to an agreement or by simple computation." *Portercare Adventist Health Sys.*

*v. Lego*, 286 P.3d 525, 528 (Colo. 2012) (quoting *Rotenberg*, 899 P.2d at 367). "Therefore, a 'liquidated debt' exists if a consumer is obligated to pay either an amount stated in the agreement, or an amount capable of ascertainment by simple computation that arises out of the subject transaction." *Id.* (holding that where "the hospital presented [the defendant] Lego with an itemized written breakdown of Mrs. Lego's medical expenses, . . . . [b]y adding the itemized charges together, one could easily compute the total value of the medical expenses").

None of the above situations in which Colorado courts have found an amount owed to be sufficiently "determinable" for purposes of invoking section 13-80-103.5(1)(a) are similar to the agreement here, which provides that the "Customer agrees that the rates charged by Contractor hereunder shall be increased from time to time to adjust for increases in the Consumer Price Index." ECF No. 38-1 at 2. Plaintiff spends pages of briefing to argue that, even if the three-year statute of limitations applied, Plaintiff's claims could not have accrued upon receipt of invoices, alone, because "Waste Connections did not disclose the CPI metrics it is purportedly relying on to make increases." ECF No. 63 at 7; *see also id.* at 7–9. Plaintiff even describes Defendants' method of calculating CPI adjustments as "talismanic." *Id.* at 7. Hence, the Court cannot find that "increases in the Consumer Price Index" are readily determinable by "refer[ence] to facts external to the agreement," *see Interbank Invs.*, 12 P.3d at 1230.

Even if CPI increases were readily determinable, the contract language here does not "set[] forth a method for determining [an] amount due," *see Interbank Invs.*, 12 P.3d at 1230. As Plaintiff points out, ECF No. 63 at 7–8, the contract merely refers to

"adjust[ments] for increases in the Consumer Price Index," without providing how such adjustments would be calculated.  *See* ECF No. 38-1 at 2.

Plaintiff cites *Nuway Organics, LLC v. Horizon Organic Dairy, LLC*, No. 14-cv-00437-WYD-CBS, 2015 WL 2128281, at *1, *3 (D. Colo. May 5, 2015), in which Judge Daniel found genuine disputes of material fact as to whether the debt was "liquidated" for statute of limitations purposes where "Horizon's alleged debt may be calculated by the formula set forth in [exhibits to the contract at issue]" and where Horizon had the discretion to adjust payments upward and downward due to market adjustment premiums ("MAP"). Plaintiff argues that here, as in *Nuway*, "the amount was to be adjusted via an external measure with some level of discretion."  ECF No. 63 at 12.  However, unlike in *Nuway*, the contract here contains no provision setting forth a formula for how Defendants' "alleged debt may be calculated."  *See* 2015 WL 2128281, at *3; ECF No. 38-1 at 2. Further, the contract provision at issue here states that *the customer* would owe *Waste Connections* increased rates of unspecified amounts "to adjust for increases in the Consumer Price Index" and other market conditions.  ECF No. 38-1 at 2.  Therefore, Plaintiff's present allegations that the contract sets forth a determinable amount of money that *Waste Connections* owes to *Voodoo* is not supported by a review of the contract terms.  The contract here does not provide any formula or method of calculating the amount of overcharged rates that Defendants would owe back to Plaintiff, which is the thrust of the Complaint's allegations here.

In addition, the contract here provides for numerous permissible reasons for Defendants to increase their rates, but on its face, the contract does not describe how

these different types of rate increases will be itemized and calculated separately from CPI-related rate adjustments.  *See* ECF No. 38-1 at 2 (permitting increases in rates for increased "disposal, fuel, materials and operations costs," "increases in the average weight per container yard of Customer's Waste Materials," "changes in local, state or federal rules, ordinances or regulations," and "taxes, fees, or other governmental charges"); *cf.* ECF No. 1 ¶ 3 n.1.  The contract here is not analogous to the situations described above in which the six-year statute of limitations has been applied to disputes regarding "a liquidated debt or unliquidated, determinable amount of money due to the

person bringing the action."[2]  Colo. Rev. Stat. § 13-80-103.5(1)(a).  *See* Colo. Rev. Stat.

§ 13-80-103.5(1)(a).  Therefore, the three-year statute of limitations under section 13-80-

101(1)(a) applies to Plaintiff's breach of contract claim.

> **b.**   **The Three-Year Statute of Limitations Applies to the Breach of the Covenant of Good Faith and Fair Dealing Claim.**

The three-year statute of limitation governs Plaintiff's claim for breach of the

covenant of good faith and fair dealing, as well.  The Colorado Supreme Court has held

that "[a] violation of the duty of good faith and fair dealing gives rise to a claim for breach

---

[2] Neither do the facts of the other cases cited by Plaintiff resemble the facts here:

- In *WTI Partners v. Ahn*, No. 18-cv-02269-MEH, 2020 WL 3259067, at *13 (D. Colo. June 16, 2020), Magistrate Judge Hegarty found that, where "the breach of contract claim . . . is for the invested amount plus eighteen percent interest," "[t]hat mount is an unliquidated but determinable amount of money due . . . ; accordingly, the amount of debt is easily calculable, so the six-year statute of limitations should apply."

- In *Wensleydale Way, Inc. v. Fleet Car Lease Inc.*, No. 17-cv-02863-RBJ, 2019 WL 295674, at *5 (D. Colo. Jan. 23, 2019), Judge Jackson found that where "the plain language of the [agreements] required defendant to pay plaintiffs 85% of the adjusted gross revenue that defendant received from its customers for each shipment transported," "[t]hat provision . . . fixes a price per unit of performance, which makes the debt definite and determinable" for purposes of the six-year statute of limitations."

- In *Slawson Expl. Co., Inc. v. U.S. Energy Dev. Corp.*, No. 17-cv-01248-PAB-KMT, 2018 WL 3079708, at *13 (D. Colo. June 20, 2018), Judge Brimmer held that the costs of drilling and completing wells in the development of oil and gas leases were "'liquidated' because [they were] capable of ascertainment by simple computation using extrinsic evidence" because "[i]n the case of a third party well, the [fees due were] 10% of the estimated well costs specified . . . ; in the case of a Slawson operated well, the [fees due were] 10% of the actual well costs charged by Slawson").

- In *Robert W. Thomas & Anne McDonald Thomas Revocable Tr. v. Inland Pac. Colo., LLC*, No. 11-cv-0333-WYD-KLM, 2012 WL 2190852, at *3 (D. Colo. June 14, 2012), Judge Daniel found that the six-year statute of limitations applied because "the promissory note set forth a method for determining the amount due to the trust."

- In *Uhl v. Fox*, 498 P.2d 1177, 1178 (Colo. App. 1972), the Colorado Court of Appeals held that a six-year statute of limitations for "actions in debt or assumpsit" applied where "[t]he contract contains provision for determining the purchase price: the note to be purchased for its face value plus accrued interest to the date of payment and the stock to be purchased at its book value as of the last quarterly statement date preceding the giving of written notice."

Each of these cases contained some provision in the contract providing a method to "easily compute" the amount owed, *see Portercare*, 286 P.3d at 528, which is absent from the contract here.

of contract." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006).  Hence, the same analysis that applies to Plaintiff's breach of contract claim applies to Plaintiff's claim for breach of the duty of good faith and fair dealing.   Moreover, section 13-80-101(1)(a) applies to "contract actions," "regardless of the theory upon which suit is brought."  Colo. Rev. Stat. § 13-80-101(1)(a).  Therefore, the above reasoning applies to Plaintiff's claim for breach of the duty of good faith and fair dealing, and the three-year statute of limitations applies to that claim, as well.

### c. The Three-Year Statute of Limitations Applies to the Unjust Enrichment Claim.

The three-year statute of limitations also applies to Plaintiff's claim for unjust enrichment.   "Under Colorado law, '[e]quitable claims . . . are technically subject to an equitable laches rather than a legal statue of limitations analysis."  *Barnett v. Surefire Med., Inc.*, 342 F. Supp. 3d 1167, 1171 (D. Colo. 2018) (Brimmer, J.) (quoting *Sterenbuch v. Goss*, 266 P.3d 428, 436 (Colo. App. 2011)).  "Absent extraordinary circumstances, 'a court will usually grant or withhold relief by analogy to the statute of limitations relating to actions at law of like character.'"  *Id.*  Here, Plaintiff brings its unjust enrichment claim on the same basis on which it brings its breach of contract and breach of the duty of good faith and fair dealing claims—that is, impermissible rate increases by Defendants.  *See* ECF No. 1 ¶ 52.  Plaintiff has not argued that there are "extraordinary circumstances" which require this Court to refrain from "grant[ing] or withhold[ing] relief by analogy to the statute of limitations relating to" those claims "of like character."  *See Barnett*, 342 F. Supp. 3d at 1171.  Therefore, the Court finds that the three-year statute of limitations also applies to Plaintiff's unjust enrichment claim.

### 3.   When Plaintiff's Claims Accrued

Under Colorado law, "[a] cause of action for breach of any express or implied contract, agreement, warranty, or trust shall be considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-108(6); *see also Skyland Metro. Dist. v. Mountain West Enter., LLC*, 184 P.3d 106, 127 (Colo. App. 2007) (quoting *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991)) ("A claim for relief does not accrue until the claimant 'knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action.'").  In addition, "[i]n the context of an unjust enrichment claim, the claim 'accrues when a person discovers, or through the exercise of reasonable diligence should discover, that all elements of the claim are present.'"  *Robert W. Thomas & Anne McDonald Thomas Revocable Tr. v. Inland Pac. Colo., LLC*, No. 11-cv-03333-WYD-KLM, 2012 WL 2190852, at *3 (D. Colo. June 14, 2012) (Daniel, J.) (quoting *Sterenbuch*, 266 P.3d at 431).  "The point of accrual is usually a question of fact, but if the undisputed facts clearly show when a plaintiff discovered or should have discovered the damage or conduct, the issue may be decided as a matter of law."  *Broomfield Senior Living Owner, LLC v. R.G. Brinkmann Co.*, 413 P.3d 219, 228 (Colo. App. 2017) (citation omitted).

Here, Plaintiff's claims are premised on Defendants' "practice of unilaterally increasing rates by more than increases in the Consumer Price Index."  ECF No. 1 ¶ 42 (breach of contract claim); *see also id.* ¶ 48 (breach of the duty of good faith and fair dealing claim) ("Waste Connections' uniform course of conduct in raising rates lacks

honesty in fact and is inconsistent with the reasonable expectation that Waste Connections would increase rates reasonably and only in accordance with the terms of the uniform contract."); *id.* ¶ 52 (unjust enrichment claim) ("Through its rate increase practices, Waste Connections received money from the putative class which in equity and justice it should not be permitted to keep.").  According to Defendants over the course of the five-year contract at issue, the service rates were increased on seven occasions, and Voodoo's owner and the contract signatory, Mr. Ulmer, timely received notice of all rate increases.  ECF No. 38 at 3 (citing ECF No. 41 ¶¶ 9–10; ECF No. 38-3 at 9, 22, 32, 37, 43, 48, 58).  The last rate increase occurred on December 19, 2017, and this rate increase was noted on an invoice to Mr. Ulmer dated January 1, 2018, which Mr. Ulmer paid on January 2, 2018.  ECF No. 38 at 3 (citing ECF No. 41 ¶¶ 10, 13; ECF No. 38-3 at 58).  The contract at issue continued until August 31, 2018, when Mr. Ulmer canceled it.  ECF No. 38 at 3 (citing ECF No. 41 ¶ 6).  Plaintiff does not dispute these facts.

Instead, Plaintiff argues first, that the claims accrued through the date of Plaintiff's last payment under the contract, even though the last rate increase took place eight months prior to that final payment.  ECF No. 63 at 4–6.  Second, Plaintiff argues that, regardless, the claims could not have accrued when Plaintiff received invoices from Defendants because the invoices did not contain sufficient information for Plaintiff to have "discovered by the exercise of reasonable diligence" the conduct underlying Plaintiff's claims.  *Id.* at 6–9; *see* Colo. Rev. Stat. § 13-80-108(6).  The Court addresses each of these arguments below, in turn.

First, Plaintiff argues that this case presents a "circumstance[] where a contract contains [a] 'continuing duty to perform,'" in which "a new claim accrues for each separate breach." *See* ECF No. 63 at 4 (quoting *Neuromonitoring Assocs. v. Centura Health Corp.*, 351 P.3d 486, 492 (Colo. App. 2012)). According to Plaintiff, each time that Defendants charged and Plaintiff paid invoices consistent with the last rate increase in December of 2017, up until the August 31, 2018 cancelation of the contract, that constituted a new breach. However, the Colorado Court of Appeals has held that "it does not necessarily follow that each billing . . . creates a new and separate cause of action." *Bennett Bear Creek Farm Water & Sanitation Dist. v. City & Cnty. of Denver*, 907 P.2d 648, 654 (Colo. App. 1995), *aff'd in part, rev'd in part on other grounds*, 928 P.2d 1254 (Colo. 1996). In that case, the plaintiffs disputed the defendant's change to its method of calculating its billing rates. *See id.* at 651–52, 654. The change was reflected in each subsequent bill after the change was implemented, but the court found that "the completed part of the [defendant's] conduct causing the alleged harm to the distributors was the change in the method . . . . Because the certainty of harm and the incentive to sue were then known, the statutory period of limitations commenced immediately, without regard to future conduct." *Id.* at 654. Similarly, here, it was Defendants informing Plaintiff in January of 2018 of the December 2017 rate increase that caused the claims to accrue, rather than each subsequent bill that was consistent with that rate change.

Plaintiff argues that "even where there is a disclosure of the change, the statute of limitations does not begin to run if the Plaintiff is without knowledge that the change causes damages." ECF No. 63 at 5–6 (citing *Board of Cnty. Comm'rs of Adams Cnty. v.*

*City & Cnty. of Denver*, No. 20CA1778, 2022 WL 619684, at *5 (Colo. App. Mar. 3, 2022)).

However, as discussed below, Plaintiff here had enough information when it received the

invoice showing the December 2017 rate increase to have an "incentive to sue," and that

incentive did not change over the course of Plaintiff's subsequent invoice payments.  *See*

*Bennett Bear Creek Farm*, 907 P.2d at 654.  As the Colorado Court of Appeals found in

*Bennett Bear Creek Farm*, each subsequent billing reflecting the same new rate did not

create "a new and separate cause of action."  *See id.*  Therefore, the Court finds that

Plaintiff's claims accrued when it received the invoice in January of 2018 reflecting

Defendants' last rate increase, which occurred in December of 2017.  Given that Plaintiff

filed its Complaint on July 23, 2021—six months after the three-year statute of limitations

ran—Plaintiff's claims are time barred.

Finally, Plaintiff argues that the claims did not accrue when it received invoices

from Defendants because receiving the invoices, alone, was not sufficient for Plaintiff to

"discover[]" the breach or to be able to "discover[] [it] by the exercise of reasonable

diligence."  *See* ECF No. 63 at 6 (quoting *Nuway*, 2015 WL 2128281, at *2).  Plaintiff

argues that the following information was necessary but "not disclose[d]" by Defendants,

and so Plaintiff was unable to discover the breach or to discover it by the exercise of

reasonable diligence: (1) what Consumer Price Index metric Defendants relied on to

increase rates—the "All Urban Consumers" price index, the "Urban Wage Earners and

Clerical Workers" price index, or the "Chained CPI for All Urban Consumers" price index,

*id.* at 7; (2) Defendants' methods for calculating their rate increases, *id.* at 7–8; and (3)

whether the increases at issue were mandatory or were increases that may be made "with the consent of Customer" under the agreement, *id.* at 8–9.

However, the knowledge necessary for Plaintiff's claims to accrue "includes knowledge of information that would lead a reasonable person to inquire further." *Epic View LLC v. Starwood Home Owners Ass'n*, No. 2018 CV 30025, 2020 WL 11563646, at *3 (Colo. Dist. Ct. Feb. 10, 2020) (noting that "[a] reasonable person would likely notice the difference between a fee of $8,500.00 and $60,000.00, or at least be motivated by such a large fee to check his financial records and see whether the current fee schedule matched what he initially paid"). Here, Plaintiff knew enough by the time it filed its Complaint in July of 2021 to inquire further and to have the incentive to allege, for example, that "[e]ach increase Waste Connections imposed on class members exceeds CPI increases, and the totality of such increases similarly far out-strip CPI increases over any given time period." ECF No. 1 ¶ 23; *see also, e.g., id.* ¶¶ 3, 14, 20–21, 42, 48, 52. Plaintiff has not argued that it acquired or Defendants disclosed any additional information after Plaintiff received the first invoice reflecting the rate increase and before Plaintiff filed the Complaint.

Moreover, "[u]ncertainty as to the precise extent of damage neither precludes the filing of a suit nor delays the accrual of a claim for purposes of the statute of limitations." *Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860, 863 (Colo. App. 1998); *see also Skyland Metro. Dist.*, 184 P.3d at 127 (citation omitted) ("The critical inquiry concerning when a cause of action accrues is knowledge of the facts essential to the action, not knowledge of the legal theory upon which the action may be brought."). To the extent

Plaintiff argues that it did not know the exact extent to which the rate increases outstripped the CPI increases, this does not delay the time of accrual.  Plaintiff's arguments do not change the Court's finding that Plaintiff's claims accrued, at the latest, when it received the January 2018 invoice reflecting Defendants' last rate increase in December of 2017, and that the claims here are therefore time-barred.

**V.    CONCLUSION**

For the reasons stated above, the Court DENIES IN PART Defendants' Motion to Dismiss for Lack of Standing and to Strike Class Action Allegations, ECF No. 37, and GRANTS Defendants' Motion for Summary Judgment, ECF No. 38.   Accordingly, Plaintiff's claims and this case are DISMISSED WITH PREJUDICE.

DATED:  August 1, 2022

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge